NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| ZION'ELIYAH YAH'TORAH, | : | |
|---|---|---|
| Plaintiff, | : | Civ. No. 15-5501 (PGS-TJB) |
| v. | : | |
| MARCUS O. HICKS; RASUL SALUKI, | : | MEMORANDUM |
| Defendants. | : | |

**PETER G. SHERIDAN, U.S.D.J.**

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiff Zion'Eliyah Yah'Torah (ECF Nos. 95 & 101) and Defendants Marcus Hicks and Rasul Saluki (ECF No. 94). For the following reasons, the motions are denied. The matter shall be set for trial.

**I.**

Plaintiff, a prisoner in New Jersey State Prison ("NJSP"), filed a complaint against Marcus Hicks, the Chairman of the New Jersey Department of Corrections ("DOC") Religious Issues Committee,[1] and Imam R. Suluki, the New Jersey Supervisor of Chaplaincy Services, for alleged violations of his First Amendment right to practice his religion. Compl., ECF No. 1.

Plaintiff is a member of the Jewish faith who uses fragrant oils on his body before he prays. According to the original complaint, Hicks told Plaintiff to tell him if Plaintiff was not

---

[1] "The Religious Issues Committee reviews situations pertinent to religious issues presented by inmates and reviews appeals submitted by inmates in regard to religious issues and renders a final decision." (ECF No. 94-4 at 6 n.1).

being given access to the oils. Compl. at 6. On January 29, 2015, Plaintiff was told he was not permitted to order more oils once the ones he had already ordered ran out. (*Id.*). Plaintiff wrote to Ombudsman Matthews, who told Plaintiff that Hicks had stated that Plaintiff would be permitted to order more oil when needed. (*Id.*). On July 1, 2015, Suluki told Plaintiff there was only enough oil for Muslim inmates. (*Id.*).

The Court dismissed the complaint without prejudice on October 29, 2015 and permitted Plaintiff to move to amend his complaint. (ECF No. 6). Plaintiff filed an amended complaint on November 23, 2015, (ECF No. 7), and the Court permitted the amended complaint to proceed against Suluki on Plaintiff's Free Exercise claims.

On January 18, 2017, Plaintiff filed a second amended complaint ("SAC") against Hicks and Suluki based on documents received in response to an Open Public Records Act request. (ECF No. 46). The SAC alleged Hicks failed to protect "Plaintiff's right to observe the basic tenets of his sincerely held religious belief from further obstruction." SAC ¶ 4(c). He further alleged Suluki refused to permit him to use oils, stating "there is no precedent for the use of oils, in kind or amount, as proposed by Yah'Torah, in the Jewish religion, the Black Jewish religion, or found in the Torah." (*Id.* ¶ 7).

The SAC set forth the history of Plaintiff's attempts to obtain oils through DOC's Chaplaincy Department beginning in 2011 when Hicks first denied Plaintiff's request to use oils. (*Id.* ¶ 8.) Hicks purportedly based his denial on the fact that he had reached out to "several leaders of the various sects of Judaism, including the Black Jewish Congregation and all denied that the oils were necessary." (*Id.*). Plaintiff appealed the decision to the New Jersey Superior Court, Appellate Division, who remanded the administrative decision back to the DOC for

consideration in light of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 et seq. ("RLUIPA").

Suluki wrote to Plaintiff on September 5, 2012 telling Plaintiff that he would be permitted to purchase five ounce bottles of fragrant oils every three months. (SAC ¶ 10). The bottles were to be stored in the Chaplaincy Department. (*Id.*). Plaintiff asked if that was the final decision of the Religious Issues Committee, and Suluki wrote back that Plaintiff would receive the final decision shortly. (*Id.* ¶ 11). Suluki thereafter issued a memorandum on February 26, 2013 stating that Plaintiff would be allowed "to order five (5) one (1) ounce plastic bottles of fragrant oils from point of purchase annually on March 1st." (*Id.* ¶ 12). He was permitted to go to the chapel between 7:30 and 9:30 to apply the oils. (*Id.*).

Plaintiff wrote to the Ombudsman Office indicting that he was not satisfied with the amount of oil he was allowed to use. (*Id.* ¶ 14). The Ombudsman indicated that he was referring Plaintiff's letter to Hicks. (*Id.* ¶ 15). Suluki reviewed Plaintiff's request for more oil and informed Plaintiff on July 3, 2013 that the amounts stated in the February 2013 memorandum remained in effect. (*Id.* ¶ 16). Hicks wrote to Plaintiff on August 15, 2013 indicating that he had received the Ombudsman's letter. (*Id.* ¶ 17). Hicks further indicated that Plaintiff should address his concerns with NJSP's Chaplaincy Staff and Administration and could contact Hicks if Plaintiff felt his concerns were not sufficiently addressed by the institution staff. (*Id.*). Plaintiff contacted NJSP Administrator Kenneth Nelsen about being denied oils on August 30, 2013. (*Id.* ¶ 18). Plaintiff was informed that the policy remained the same. (*Id.*).

Plaintiff filed a remedy system form on September 11, 2013. (*Id.* ¶ 19). He was told that he would be permitted to order oils in March 2014. (*Id.*). On October 15, 2013, Plaintiff received a letter from NJSP's Coordinator of Chaplaincy Rev. Wilcox indicating that all in-house policies

were governed by department-wide standardization. (*Id.* ¶ 21). Plaintiff wrote to new NJSP Administrator D'Illio stating the policy limiting him to 5-one ounce bottles of oil was not in compliance with DOC-wide policy. (*Id.* ¶ 22). Assistant Superintendent Robinson responded stating that the February 2013 policy would not be changing. (*Id.* ¶ 23).

On October 19, 2013, Plaintiff filed a grievance regarding an incident in which Suluki allegedly came to his cell and told Plaintiff that "Your arms are [too] short to box with God! Your problem is that you don't listen, if you ever listened at all!" (*Id.* ¶ 24). Plaintiff complained about Suluki's "passive contempt" towards his religious practices and alleged Suluki was biased against non-Muslims. (*Id.*).

Plaintiff continued to request a final resolution of NJSP's in-house policy limiting his oil use to five one-ounce bottles per year, alleging the policy violated the First Amendment and RLUIPA. (*Id.* ¶¶ 25-28). He received a letter from the Ombudsman's Office on December 19, 2013, stating that Hicks had advised the Office that "'there is no restriction on the amount of oil that can be used. In this case, it would seem that the inmate could purchase the oils in excess of 5 ounces, as long as it is secured with the Chaplain and only to be used as part of a religious service. He cannot have it on his person.'" (*Id.* ¶ 29). However, Suluki told Plaintiff on March 16, 2014 that Plaintiff would only be able to purchase five one-ounce bottles annually. (*Id.* ¶ 31). All other sized bottles would be rejected. (*Id.*).

Plaintiff wrote to Associate Administrator Campos asking him to review Plaintiff's oil ritual to determine if there were any security concerns. (*Id.* ¶ 33). In response to one of Plaintiff's grievances, Campos indicated that Plaintiff would be permitted to use oils as part of his daily ritual and prayers. (*Id.* ¶ 40). He would be able to buy oils in the same quantities and limits as other inmates, and he could submit a request to order more oil whenever he ran out. The request

to order would be reviewed, and unlimited quantities would not be approved as oiling objects in the prison was a security concern. (*Id.*). Plaintiff asked Hicks for a final resolution of this matter on June 22, 2014. (*Id.* ¶ 41). On November 11, 2014, Plaintiff filed an inquiry form asking what the current NJSP policy was, and Campos responded that Plaintiff was allowed to purchase five one-ounce bottles every March and could request to purchase additional bottles if he ran out. (*Id.* ¶ 42).

Plaintiff filed a formal grievance on December 23, 2014 stating he had requested to purchase oil and Campos had denied him permission. (*Id.* ¶ 43). Plaintiff asked Campos to approve another order in January 2015, but Campos told Plaintiff that he had to wait until March to order more oil. (*Id.* ¶ 44). Plaintiff attempted to address his concerns with the assistance of the Ombudsman's Office, but the Office merely referred Plaintiff's letters back to NJSP officials. (*Id.* ¶¶ 45-47, 49-50, 53).

When Plaintiff was able to order oils in March 2015, Suluki told Plaintiff that the prison was investigating a way to provide Plaintiff with the oils "that will properly secure them and not disrupt the other[] worshipers. Some people are not able to tolerate fragrances." (*Id.* ¶ 48). Plaintiff asked about the "undue delays." (*Id.* ¶ 51). He was told that his religious items would be placed in a box in the housing officers' booth. (*Id.*). When Plaintiff asked Suluki why there were delays in providing him with his religious items, Suluki responded that Plaintiff's oils had not been able to be found on two occasions. (*Id.* ¶ 52).

On May 6 and 22, 2015, Plaintiff wrote to Hicks asking for a final resolution of his request and if he agreed with the statement of the Ombudsman's Office that the matter had been resolved. (*Id.* ¶¶ 54-56). On July 1, 2015 Suluki informed Plaintiff that he only received enough oil to supply one Muslim service. (*Id.* ¶ 61). Plaintiff requested permission to purchase more oil

on August 24, 2015, and Campos granted permission on August 27, 2015. (*Id.* ¶¶ 62-63). Campos denied Plaintiff's request to purchase more oil in October 2015. (*Id.* ¶ 65).

Plaintiff filed a motion for partial summary judgment on the First Amendment claims on April 24, 2017. (ECF No. 57). Magistrate Judge Bongiovanni dismissed the motion without prejudice as premature. (ECF No. 64). The matter proceeded through discovery and Plaintiff refiled his motion on October 3, 2015. (ECF No. 78). The motion was administratively terminated once Defendants represented that settlement negotiations were taking place. (ECF No. 90). Defendants filed a motion for summary judgment on all claims on March 27, 2018, (ECF No 94), and Plaintiff resubmitted his motion for partial summary judgment against Suluki on April 10, 2018, (ECF No. 95). He filed a motion for partial summary judgment on the claims against Hicks on June 14, 2018. (ECF No. 101). Defendants oppose both of Plaintiff's motions. (ECF No. 107).

The Court conducted oral argument on June 1, 2018. Plaintiff appeared telephonically. The matter is now ripe for decision.

**II.**

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.

### A. First Amendment

Plaintiff asserts Hicks and Suluki violated the First Amendment by denying him the "regular use of fragrant oils for prayer." Plaintiff's Dec. ¶ 2. "Defendant Suluki stated that there is no precedent for the use of oils, in kind or amount, as proposed by Yah'Torah, in the Jewish religion, the Black Jewish religion, or found in the Torah." Plaintiff's Statement of Facts ("PSOF").[2] Plaintiff also claims Suluki refused to provide him with oil from the Chaplaincy Department, claiming "he only received enough oil to supply one Muslim service." PSOF ¶ 12. Defendants argue there was no First Amendment violation, or, alternatively, they are entitled to qualified immunity.

The Court denies Defendants' motion for summary judgment because they have not shown they are entitled to judgment as a matter of law. "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). *See* U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."). "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *DeHart v. Horn*, 227 F.3d 47, 50–51 (3d Cir. 2000) (en banc) (citing *Pell v. Procunier*, 417 U.S. 817, 822-23

---

[2] Plaintiff's statement of facts is the same for both of his summary judgment motions. (ECF No 95 at 15-18; ECF No. 101 at 16-19).

(1974)). "Thus, a prison inmate 'retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Id.* (quoting *Pell*, 417 U.S. at 822 (alteration in original)).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Court considers four factors in assessing the overall reasonableness of a prison regulation: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are alternatives to the regulation that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Id.* at 89-91.

To make out a claim for denial of an individual's free exercise rights under the First Amendment, an individual must allege the regulation impinges on a sincerely held religious belief. *DeHart*, 227 F.3d at 51-52. Plaintiff uses fragrant oils to "anoint" himself before praying. He will cover himself from head to toe with the oil before putting on his Tefillin/Phylactery, which are "two small leather boxes containing slips of paper with scriptures written on them, traditionally worn by Jewish men during morning and afternoon weekday prayers as reminders of their religious duties." (ECF No. 95 at 21). "Fragrance oils are an important part of Plaintiff's spiritual transformation that takes place during donning Tefillin and prayer. This practice cannot be substituted; it is the only means in which Plaintiff can facilitate this transformation." (ECF No. 95 at 21). "Plaintiff, as a Hebrew, uses oil to self-dedicate and bind himself to GOD." (ECF

8

No. 95 at 22). Aside from arguing that no "mainstream" branch of Judaism uses oils in the same way as Plaintiff, (*see* ECF No. 94-8 ("[O]utreach and research conducted on this matter from leaders of various sects of Judaism, inclusive of the Black Jewish Congregation, have all disputed the use of oils in any practice conducted by this faith.")), Defendants do not seem to contest the "sincerely held religious belief" aspect of the First Amendment claim. The Court will therefore proceed to the *Turner* analysis.

Defendants argue they are entitled to summary judgment under *Turner* because the restrictions imposed on Plaintiff's purchase and possession of fragrant oil were rationally related to a legitimate penological interest, namely the security of the facility. "New Jersey State Prison, as New Jersey's maximum security institution, maintains a compelling interest in regulating all avenues of contraband introduction." (ECF No 94-4 at 18). "Here, the New Jersey State Prison administration was justified in their determination that the maintenance of the safety and security standards in the facility would be threatened by allowing Plaintiff to purchase *excessive* amounts of oil." (*Id.* at 18-19) (emphasis added). The Court is unable to determine as a matter of law that Defendants are entitled to summary judgment because Defendants have not addressed all of the *Turner* factors, specifically the third and fourth factors, or factually supported their motion beyond a vague invocation of "security."[3] A conclusory statement without factual support in the record is not enough to win on summary judgment. *See, e.g., Washington v. Klem,* 497 F.3d 272, 283 (3d Cir. 2007) (noting on RLUIPA claim that "[e]ven in light of the substantial deference

---

[3] The only evidence in the record touching on the security concern was Plaintiff's deposition testimony that an inmate had once "heated up some olive oil and threw it on a guy. This was in lockup. The administration said no oil because of the –we want to control it." (ECF No. 94-12 at 64:6-10). He further admitted other inmates sell their oil, though he denied doing so himself. (ECF No. 94-12 at 80:9-15). These admissions do little to support Defendants' arguments as Plaintiff's religious oil was kept in the Chaplaincy Department, not Plaintiff's cell, and Defendants cite to no evidence in the record supporting their contraband arguments. (ECF No. 94-4 at 19).

9

given to prison authorities, the mere assertion of security or health reasons is not, by itself, enough for the Government to satisfy the compelling governmental interest requirement. . . . A conclusory statement is not enough."). At oral argument, Defendants were unable to explain why five ounces per year was chosen as the purchasing limit. They have not pointed to evidence in the record that supports their argument that permitting Plaintiff to purchase oil as needed, which would be stored in the Chaplaincy Department until he came to pray,[4] would cause a security risk. The fact that Plaintiff was accommodated for a period of time by Reverend Wilcox, Suluki's replacement, (ECF No. 95 at 28; ECF No. 78-1 at 122-49), creates a factual issue regarding the burden on NJSP. In addition, there are factual questions as to Defendants' personal involvement as there are memoranda and letters issued by both defendants setting out the policy. *See, e.g.*, ECF No. 94-11; 78-1 at 6-7.

Plaintiff is also not entitled to summary judgment. Plaintiff asserts the first *Turner* factor is in his favor because the policy limiting him to five one-ounce bottles of oil annually is not in dispute and Defendants failed to follow that policy by permitting Plaintiff access to the Chaplaincy Department's oil when Plaintiff's oil ran out. (ECF No. 95 at 28). He argues Hicks failed to rectify the situation when Plaintiff made complaints about not being provided oil. (ECF No. 101 at 29-30). Plaintiff argues he satisfies the second *Turner* factor because his oil ritual is obligatory. (ECF No. 95 at 28; ECF No. 101 at 31). He also states that once Reverend Wilcox replaced Suluki he began receiving the religious accommodation.[5] (ECF No. 95 at 28; ECF No. 101 at 31). Plaintiff argues he satisfies the final *Turner* factors because Reverend Wilcox "has

---

[4] Plaintiff confirmed at oral argument he had no objection to having the oil stored in the Chaplaincy Department.

[5] At oral argument, Plaintiff indicated that he was no longer permitted to order oil from source of sale and that he would have to purchase his oil from the commissary once he used up the oil he had already purchased. He stated the oil available for sale in commissary did not meet his personal definition of "kosher" and was therefore not appropriate for his use.

adhered to the fullest with the Regulation that was put in place by [Hicks]. This full implementation of [Hicks'] Religious Accommodation has not had a deleterious impact on other inmates, guards, and the allocation of prisoner resources . . . ." (ECF No. 95 at 28). He argues that "Defendant Hicks was complicate [sic] while his subordinate(s) (1) forced Plaintiff, to abandon the precepts of his religion in order to receive the benefit of praying without fragrance oil and (2) his subordinate(s) substantially pressure the Plaintiff to modify his behavior hoping that Plaintiff would change his sincerely held religious beliefs." (ECF No. 101 at 32). Defendants have not addressed these points at all.

Plaintiff is not entitled to summary judgment as a matter of law because of the factual questions identified by the Court. His motions are denied.

## B. Qualified Immunity

Defendants also move for summary judgment on the basis of qualified immunity. "Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of his or her federal rights. However, when a public official's actions give rise to a § 1983 claim, the privilege of qualified immunity can serve as a shield from civil suit in certain circumstances." *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006). The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right [.]" *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (internal citation and quotation marks omitted). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.*

11

For purposes of this motion only, the Court concludes that Plaintiff has sufficiently shown a violation of a constitutional right as there is enough evidence to reasonably conclude Defendants substantially burdened his sincerely-held religious belief by denying him the ability to order fragrant prayer oil from an approved source of sale at his own expense that would ultimately be used in his prayers. The second question is whether that right was clearly established at the time of the events. "In some cases, even though there may be no previous precedent directly on point, an action can still violate a clearly established right where a general constitutional rule already identified in the decisional law applies with obvious clarity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). That constitutional rule is *Turner*, which "anticipate[s] that prison officials are called upon to act in a variety of factual scenarios and that the lawfulness of their actions will be judged in the context of those specific scenarios." *Potts v. Holt*, 617 F. App'x 148, 152 (3d Cir. 2015). *See also Williams*, 455 F.3d at 192 ("[A]lthough the Third Circuit has not ruled on the specific right . . ., we have observed that '[i]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising.'" (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 & n.4 (3d Cir. 2001) (second alteration in original))); *DeHart v. Horn*, 227 F.3d 47, 59 n.8 (3d Cir. 2000) (collecting cases addressing religious diets and noting that *Turner* requires "a contextual, record-sensitive analysis").

On the record before the Court and construing all inferences in Plaintiff's favor as the non-moving party on the issue of qualified immunity, Defendants have not adduced evidence sufficient to show that the religious oil policy was reasonable under *Turner*. Defendants have not established any nexus between permitting Plaintiff to order oil from an approved source of

sale at his own expense, storing the oil in the Chaplaincy Department, using the oil in his prayers, and any security issue at NJSP. In the absence of factual support justifying the prison policy based on security, the Court cannot grant Defendants qualified immunity. *See Boles v. Neet*, 486 F.3d 1177, 1183 (10th Cir. 2007) ("Without record support, we cannot conclude that Warden Neet's actions were justified by security concerns or any other valid penological objectives. . . . At this stage of the litigation, however, the uncontroverted factual allegations viewed in the light most favorable to Boles show that Warden Neet placed substantial burdens on Boles's free exercise rights with no valid penological justification."); *Salahuddin v. Goord*, 467 F.3d 263, 275–76 (2d Cir. 2006) ("Qualified immunity is not appropriate at this stage because it was clearly established at the time of the alleged violations that prison officials may not substantially burden inmates' right to religious exercise without some justification and because we cannot say as a matter of law that it was objectively reasonable for any defendant to believe that the facts as they stand on summary judgment showed no violation of a clearly established right."). *See also Hammons v. Saffle*, 348 F.3d 1250, 1255 (10th Cir. 2003) (upholding prison policy of prohibiting keeping religious oils in cells because policy permitted inmates to purchase oils and possess them in designated, supervised areas); *Young v. Saunders*, 34 F. App'x 925, 926 (4th Cir. 2002) (remanding to district court for after summary judgment on free exercise claim because defendants "failed to articulate the manner in which these legitimate goals are advanced by restricting the purchase of non-flammable prayer oil and religious powder").

Based on the record before the Court, or lack thereof, a reasonable official at the time of the events would have known that his actions were unreasonable under *Turner*. Defendants' motion for qualified immunity are denied.

## C. Injunctive Relief

Defendants suggest Plaintiff's request for injunctive relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., is moot. (ECF No. 94-4 at 9 n.2). *See Payne v. Doe*, 636 F. App'x 120, 125 (3d Cir. 2016) ("[T]he only relief potentially available to [Plaintiff] for his RLUIPA claims is injunctive or declaratory. RLUIPA does not allow for the recovery of money damages." (citing *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012)). At oral argument, Plaintiff indicated that he was no longer permitted to order oil from source of sale and that he would have to purchase his oil from the commissary once he used up the oil he had already purchased. His injunctive relief claims are therefore not moot.

## D. Punitive Damages

Defendants finally assert Plaintiff's punitive damage claims should be dismissed because there is no evidence in the record that they acted with evil intent or motive. (ECF No. 94-4 at 24).

Under § 1983, a defendant whose conduct demonstrates a reckless or callous indifference toward others' rights may be liable for punitive damages. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (stating that a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989) (holding that a defendant's conduct must be at minimum reckless or callous to impose punitive damages under § 1983). The Third Circuit "has explained that the term 'reckless indifference' refers to the defendant's knowledge that he 'may be acting in violation of federal law.'" *Whittaker v. Fayette Cty.*, 65 F. App'x 387, 393 (3d Cir. 2003) (quoting *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000)). A reasonable jury could decide on the record before the Court that

Defendants were aware they were violating Plaintiff's federally protected rights. This is therefore a question for the jury. *See Coleman v. Rahija*, 114 F.3d 778, 787 (3d Cir. 1997).

**V.**

For the reasons stated above, the cross-motions for summary judgment are denied. The matter shall be set for trial.

DATED: December 4, 2018

_____
PETER G. SHERIDAN
United States District Judge